Leslie **COLLINS** et al., Appellants,

v.

**MERCURY STEAMSHIP CO., INC.,**
et al., Appellees.

**No. 7877.**

Court of Civil Appeals of Texas, Beaumont.

Feb. 17, 1977.

Rehearing Denied March 17, 1977.

Roger S. McCabe, Beaumont, for appellants.

W. G. Griggs, James L. Walker, Houston, for appellees.

STEPHENSON, Justice.

Plaintiffs, all members of the crew of the vessel SS HELEN H, brought this suit for negligence under the Jones Act against Mercury Steamship Co., Inc. (Mercury), and also for common law negligence against Port Arthur Towing Company (PATCO). All injuries complained of were allegedly caused by ammonia gassing. Trial was by jury and judgment was rendered for Mercury on the issues, and for PATCO, disregarding certain jury findings.

Plaintiffs alleged no specific acts of negligence against PATCO, but relied upon res ipsa loquitur. The jury made these findings: On the occasion in question, PATCO's barges and their fixtures and appurtenances were under its custody and control; ammonia fumes escaped from such barges; such ammonia would not have escaped but for negligence; such negligence was a proximate cause of plaintiffs' injuries. Plaintiffs were damaged in the amounts set forth in a list.

PATCO's motion to disregard the above findings and for judgment non obstante veredicto is based solely upon no evidence points. In passing upon plaintiffs' points of error as to PATCO, we consider only the evidence favorable to the jury findings. Only plaintiffs James Williams, Lorenza Bush and Louis Brown appeal from this portion of the judgment.

The favorable evidence shows the following: On the occasion in question, PATCO owned two barges which were tied up at the docks of National Phosphate Corporation (National). The two barges carried a cargo of liquid ammonia which they were engaged in discharging into a pipeline maintained by National exclusively for ammonia. The pipeline ran from the dock about half a mile to a storage tank located on National's property. The barges contain two refrigeration units. The ammonia must be cooled to a minus 28 degrees Fahrenheit temperature in order to keep it in a liquid state. When the temperature of the ammonia rises above minus 28 degrees Fahrenheit it vaporizes into a gas resembling steam. No other barges were located at the dock at that time. The log of the SS HELEN H contained the following: "2012 Port Arthur Towing Company barge Patco 51 released excessive ammonia cloud into atmosphere while moored to dock about 200 feet on port side of vessel and being on the weather side of vessel." Captain Petrulis of the HELEN H testified he could see the PATCO barge and that a huge white cloud was emanating from the area of the barge. Plaintiff Brown testified that immediately following the gassing incident he looked over the port side and saw ammonia vapors still seeping out and blowing toward the HELEN H. It appeared to him that the vapors were coming from a valve on top of the tank on the barge and near the middle of the barge. Plaintiff Bush testified the vapor was right over the barge and appeared to be coming from a pipe on the barge. Claude Crow, a PATCO employee, testified he was a tankerman for PATCO on the occasion in question, and that it was his responsibility, during discharge operations, to see that the equipment operated

properly and to keep the temperature of the cargo at minus 28 degrees Fahrenheit. Such pumping operations consume from 12 to 36 hours, during which time he does not sleep, although he did not recall how long it took on this occasion.

The favorable evidence supporting specifically the question as to whether the negligent discharge of the ammonia fumes proximately caused the plaintiffs' injuries is as follows: Plaintiff Williams testified he inhaled some of the ammonia fumes in the engine room from which he suffered chest pains, burning in his stomach, sore throat and eyes, and vomiting. His eyes continue to water and be sensitive to light, and he has suffered a loss of vision which requires the use of eyeglasses. He suffers headaches on a daily basis and he had none of these problems before the gassing incident. Plaintiff Brown testified he was playing cards in the mess hall when he smelled the ammonia gas. He suffered weakness, burning and strain with his eyes, difficulty with breathing and spitting and coughing.

Plaintiff Bush testified as follows: He was also playing cards in the mess hall when he smelled an odor and began to sneeze, cough and gag. He suffered burning and watering of the eyes, burning in the stomach, and regular headaches for the next six weeks following the ammonia gassing. The burning in the stomach has continued, a sensation he did not have before this incident.

The foregoing evidence supported the jury findings and it was error for the trial court to disregard them and grant the judgment for PATCO non obstante veredicto. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 550 (1962); and *Leonard v. Texaco, Inc.*, 422 S.W.2d 160, 165 (Tex.1967).

Plaintiffs' first three points of error as to Mercury complain about action of the trial court in submitting "proximate cause" in its charge concerning this defendant.

This jury found that there was a failure to sound the general alarm on the occasion

**216**

in question, and that such failure was negligence. Then this jury declined to find that such negligence was the proximate cause of any injuries to any of the plaintiffs. Proximate cause was defined as follows:

" 'PROXIMATE CAUSE' means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event."

These points are sustained.

■ The Jones Act, which is *46 U.S.C.A., § 688*, reads in part as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . "

The courts have consistently held that the reference in the Jones Act to the statutes of the United States pertaining to railroad employees is a reference to the Federal Employers' Liability Act. The Federal Employers' Liability Act, which is *45 U.S.C.A., § 51*, provides in part:

"Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury : . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . . "

It is noted that there is no reference to cause in fact or foreseeability, but requires the injury to be one "resulting in whole or in part" from the negligence.

■ In actions under the Federal Employers' Liability Act, the Supreme Court of the United States in *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493, 500 (1957), has held:

"The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference."

The Dallas Court of Civil Appeals observed that "[t]he Congress has seen fit by statute to supplant the common-law duty of railroads to employees by the more drastic duty of the 'In-whole-or-in-part' causation concept" in *Missouri-Kansas-Texas RR. Co. v. Shelton*, 383 S.W.2d 842 (Tex.Civ.App.—Dallas 1964, writ ref. n.r.e.). See also, *Horn v. Atchison, Topeka and Santa Fe Railway Co.*, 519 S.W.2d 894, 896 (Tex.Civ.App.—Beaumont 1975, no writ).

The precise question before this court arose in *Page v. St. Louis Southwestern Railway Company*, 312 F.2d 84, 92 (5th Cir. 1963), 98 A.L.R.2d 639 (1964). This is a F.E.L.A. case in which the trial court submitted proximate cause as to defendant's negligence, with a definition which included cause in fact and proximate cause. The Circuit Court found such form of submission to be erroneous because the instruction on proximate cause unduly restricted the jury in the exercise of its functions. See also, *Brown & Root, Inc. v. Wade*, 510 S.W.2d 408 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.), which cites 98 A.L.R.2d 677, the annotation following the *Page Case, supra.*

We have not been cited a Texas case directly in point nor have we been referred to a case which holds specifically that the trial court should not use the term "proximate cause" in its charge when dealing

with the defendant. However, that result is inescapable if we are to follow the Supreme Court of the United States and other courts cited above.

■ We now hold that it was error for the trial court to instruct the jury, in effect, in reference to the causation issue that plaintiffs' burden was to prove defendants' negligence must be a proximate cause of plaintiffs' injuries. The definition given by the trial court included both "cause in fact" and "foreseeability", neither of which are required under the F.E.L.A. statutes. We think it is now clear that the plaintiffs' burden, in either a F.E.L.A. or Jones Act case, is to prove only that plaintiffs' injuries resulted in whole or in part from defendants' negligence.

This jury found Mercury guilty of negligence in failing to sound the general alarm on the occasion in question. From a study of the record as a whole, we have come to the conclusion that the error of the trial court, in requiring this jury to find this incident would not have occurred but for the negligence of Mercury, and in requiring the jury to find that Mercury should have foreseen this or a similar event, is reversible error. These points of error are sustained.

The judgment of the trial court is reversed and rendered as to defendant PATCO, that plaintiff Williams recover $5,000 and that plaintiffs Bush and Brown recover $500 each from PATCO. The judgment as to Mercury is reversed and remanded for trial as to all plaintiffs except Grey Little who did not appeal.

REVERSED and RENDERED in part, and REVERSED and REMANDED in part.